**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**ANDREA DERKS FAGAN, et al.**                    **CIVIL ACTION**

**VERSUS**                                                          **NO. 12-189**

**LAWRENCE NATHAN ASSOCIATES, INC.**     **SECTION: "G"(1)**

<u>**ORDER AND REASONS**</u>

Before the Court is Plaintiffs Andrea Derks Fagan and George D. Fagan's (the "Fagans"
or "Plaintiffs") Motion for Default Judgment,[1] wherein Plaintiffs move the Court for a default
judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure against Lawrence Nathan
Associates, Inc. ("Defendant") for engaging in allegedly improper and unlawful debt collection
practices and unfair trade practices in attempting to collect a debt for Budget Rent-a-Car.
Having considered the motion, the memorandum in support, and the applicable law, the Court
will grant in part and deny in part the motion.


**I.  Background**

*A.  Factual Background*

*1.  The Parties*

Andrea Derks Fagan and George D. Fagan are Louisiana residents that have been married
since August 21, 1988.  Mr. Fagan has been a partner with Leake & Anderson, LLP ("Leake &
Anderson") since October 1, 1987.  Defendant collects and facilitates the collection of debts
owed or claimed by others against various third parties located throughout the United States.
According to the online records maintained by the Nevada Secretary of State, Defendant is a

---

[1] Rec. Doc. 16.

Nevada corporation with its principal place of business in Nevada.  Defendant was licensed in Louisiana from April 24, 2000 to March 28, 2005.  Although Defendant is no longer licensed as a "debt collector" in Louisiana, Defendant allegedly continues to do business in the state and represents via its website that it conducts debt collection business in Louisiana.[2]

 2.  *Car Rental*

Prior to taking a business trip, Mr. Fagan used his corporate credit card to reserve a vehicle with Budget Rent-a-Car ("Budget") on behalf of Leake & Anderson, for business use in Las Vegas, Nevada.  On July 18, 2009, Mr. Fagan and another Leake & Anderson attorney, Margaret F. Swetman, traveled to Las Vegas to prepare for, and participate in, arbitration proceedings beginning on July 20, 2009, as attorneys for a securities brokerage firm in a separate and unrelated matter.  Mr. Fagan provided Budget with his corporate credit card, which listed "George D Fagan Leake & Anderson" as the cardholder, when he picked up the vehicle at McCarran International Airport in Las Vegas, Nevada.  Upon first observing the car, Mr. Fagan and Ms. Swetman noticed that it had the wear and tear of a well-used vehicle, was not well-cleaned, and had scuffs and marks, but they did not notice any significant damage to the exterior of the vehicle.

On July 19, 2009, Franklin J. Best, managing corporate counsel for the securities brokerage firm, also arrived in Las Vegas.  From July 20, 2009 to July 24, 2009, Mr. Fagan, Ms. Swetman, and Mr. Best participated in the arbitration proceedings.  During this time, Mr. Fagan used the vehicle only for business use, mainly traveling to and from the airport, the hotel, and the arbitration proceedings.  On July 24, 2009, Mr. Fagan turned the vehicle over to Mr. Best, who

---

[2] Rec. Doc. 16-1 at pp. 14-15.

did not leave until July 25, 2009.  Prior to leaving Las Vegas, Mr. Fagan contacted Budget and verified that Mr. Best was authorized to use the vehicle.

Mr. Best returned the vehicle to Budget at the McCarran International Airport in Las Vegas on July 25, 2009, and Mr. Fagan's corporate American Express card was charged $695.97 for the rental.  Between July 18 and July 25, 2009, the vehicle was driven 97 miles and, according to Mr. Fagan, Ms. Swetman, and Mr. Best, did not sustain any damage during that time.  Upon returning the vehicle, the Budget attendant claimed to observe damage to the right rear passenger door of the Budget vehicle, but Mr. Best did not see the alleged damage.  Mr. Best signed a document entitled Property Damage Incident Report furnished by the Budget attendant, and he stated in the report that the alleged damage was not visible.

### 3.  Charge for Damage to the Vehicle

On July 27, 2009, Budget sent Mr. Fagan a letter claiming that the Budget vehicle was returned with damage on January 11, 2008, although Mr. Fagan did not rent the vehicle until July 18, 2009.  The letter made no reference to Leake & Anderson.  On July 31, 2009, Mr. Fagan sent a letter to Malco Enterprises of Nevada d/b/a Budget Rent-a-Car on his law firm's letterhead disputing the alleged damage.  In subsequent letters directed to Mr. Fagan, but not Leake & Anderson, Budget claimed that there was some damage on the very bottom of the rear side passenger door and for the first time referenced alleged damage on the right front side mirror.[3]

On August 8, 2009, Budget sent a letter to the physical address of Leake & Anderson at 1100 Poydras Street, New Orleans, Louisiana, but addressed directly to Mr. Fagan, which sought to collect $903.22 from Mr. Fagan, including $249.94 for loss of use, a $100.00 administration

---

[3] *Id.* at Exs. 3 & 4 (Affidavit of George Fagan ¶ 34).

fee, and taxes in the amount of $38.60.  On October 19, 2009, Budget sent a letter to Leake & Anderson to the attention of "George Fagan" that reiterated the allegations of damage and sought to collect $904.96.

### 4. Defendant's Attempt to Collect the Alleged Debt

Budget subsequently engaged Defendant to collect the purported debt and furnished Defendant with Budget's file relating to the incident. On November 19, 2009, Defendant sent a letter on behalf of Budget directly to Mr. Fagan seeking to collect $1,357.44, without explaining the increase.  Mr. Fagan claims that within three months after the November 19, 2009 letter, Defendant sent another letter to Mr. Fagan seeking to collect the debt, but Mr. Fagan did not maintain a copy.

In August 2011, the Fagans contacted Wells Fargo Home Mortgage ("Wells Fargo") to refinance their home and open a home equity line of credit.  Initially, Wells Fargo quoted the Fagans a 4.25% interest rate to refinance their home assuming the Fagans had an "excellent" credit rating. When Wells Fargo requested a Rels Report summarizing credit reporting information about the Fagans, the Rels Report indicated that Defendant had reported an outstanding debt to Experian and Equifax in the amount of $1,357.00.  Defendant had not reported the debt to TransUnion.  Accordingly, Equifax and Experian reported scores that Wells Fargo classified as "good;" whereas, TransUnion reported a score that Wells Fargo classified as "excellent."  Due to Mr. Fagan's lower credit score, Wells Fargo could not honor its prior quotation.

On September 19, 2011, Mr. Fagan sent a letter by telecopier, email, and U.S. mail to Defendant disputing Budget's claims and requesting validation.  On October 18, 2011, Mr.

4

Fagan sent a follow-up letter to Defendant by Federal Express, attaching a draft Complaint. Defendant did not respond to any of Mr. Fagan's letters.

On October 27, 2011, the Fagans accepted a higher 4.375% interest rate to refinance their home on December 14, 2011 based on the "good" credit rating.  In addition, on January 2, 2012, the Fagans purchased a new Nissan Murano automobile, and ultimately refinanced the vehicle through Capital One.  Because the Equifax and Experian credit scores were still "good" the Fagans accepted a higher 3.99% interest rate through Capital One, rather than a 3.5% interest rate available through USAA Federal Savings Bank, N.A. for individuals with an "excellent" credit rating.  Finally, the Fagans claim that they maintain a few credit cards that have been subject to a .5% to 1.0% increase in the interest rates due to lowering of the Fagans credit rating from "excellent" to "good."

### B.  Procedural Background

The Fagans filed the instant lawsuit on January 23, 2012, after learning that Defendant had furnished false information to Equifax and Experian and after receiving no response from Defendant to Mr. Fagan's letters demanding that the false information be corrected.  On January 26, 2012, Plaintiffs' counsel sent a letter to Defendant and enclosed the Complaint and summons issued by the Clerk of Court.  This matter was originally allotted to Judge Carl Barbier, of Section "J," but, on February 7, 2012, this matter was reassigned to this section.

Although Defendant was served, Defendant never contacted the Fagans or their counsel or made any appearance in the lawsuit.[4]  Accordingly, on February 23, 2012, the Fagans filed a

---

[4] *Id.* at p. 2.

Motion for Entry of Default in accordance with Rule 55,[5] which was entered by the Clerk of Court on February 27, 2012.[6]  After this matter was placed on a call docket, Plaintiffs filed the instant Motion for Default Judgment on January 16, 2013.[7]

## II.  Law and Analysis

### A.  Personal Jurisdiction and Service of Process

A district court "'has an affirmative duty to look into its jurisdiction both over the subject matter and the parties'" before granting a motion for a default judgment,[8] because "[a] judgment entered without personal jurisdiction is void."[9]  Determining whether personal jurisdiction exists over an out-of-state defendant involves two inquiries: (1) whether a forum state's long arm statute permits service of process and (2) whether the assertion of personal jurisdiction violates due process.[10]  But in Louisiana, "[t]hese two inquiries merge into one, because Louisiana's long-arm statute permits jurisdiction coterminous with the scope of the Due Process Clause."[11]  Therefore, the inquiry is whether the exercise of personal jurisdiction comports with federal constitutional guarantees.[12]

In *Jackson v. Tanfoglio Guiuseppe, S.R.L.*, the Fifth Circuit stated:

---

[5] Rec. Doc. 8.

[6] Rec. Doc. 9.

[7] Rec. Doc. 16.

[8] *Sys. Pipe & Supply, Inc. v. M/V VIKTOR KURNATOVSKIY*, 242 F.3d 322, 324 (5th Cir. 2001) (quoting *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986)).

[9] *Id.* (citing *Broadcast Music, Inc. v. M.T.S. Enters., Inc.*, 811 F.2d 278 (5th Cir. 1987)).

[10] *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002); *see also Interfirst Bank Clifton v. Fernandez*, 844 F.2d 279, 282 (5th Cir. 1990).

[11] *Id.* (citing La. Rev. Stat. § 13:3201(B); *Growden v. Ed Bowlin & Assocs.*, 733 F.2d 1149, 1150 (5th Cir. 1984)); *see also Guidry v. U.S. Tobacco Co., Inc.* 188 F.3d 619, 624 (5th Cir. 1999)).

[12] *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010).

> A federal district court in Louisiana . . . may exercise personal jurisdiction over a non-resident defendant if (1) the defendant has purposefully availed himself of the protections and benefits of Louisiana by establishing "minimum contacts" in the state, and (2) the exercise of the jurisdiction complies with traditional notions of "fair play and substantial justice."[13]

The Fifth Circuit elaborated on the extent of the "minimum contacts" necessary to support personal jurisdiction:

> "Jurisdiction may be general or specific," depending on the nature of the defendant's forum-related contacts." "Where a defendant 'has continuous and systematic general business contacts' with the forum state, the court may exercise general jurisdiction over any action brought against the defendant. Where contacts are less pervasive, the court may still exercise 'specific' jurisdiction 'in a suit arising out of or related to the defendant's contacts with the forum.'"[14]

### 1.   General Jurisdiction

"[G]eneral jurisdiction may be found when the defendant's contacts with the forum state are substantial, continuous, and systematic,"[15] however, "the 'continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum.'"[16] Within the Fifth Circuit, "[t]o confer general jurisdiction, a defendant must have a business presence in the forum state."[17]  In *Jackson*, the Fifth Circuit found that the contacts with the forum states were "neither systematic, continuous, nor substantial enough to support general jurisdiction" where the defendant "(1) suppl[ied] parts or components for the assembly of handguns in Florida, which were then sold throughout the United States by other companies; (2)

---

[13] *Id.* (quoting *Walk Haydel & Assocs. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008)).

[14] *Id.* (quoting *Luv N' Care v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006)).

[15] *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-19 (1984)).

[16] *Id.* (quoting *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir.2008)).

[17] *Id.*

attend[ed] two trade shows in New Orleans; and (3) [engaged in] advertising and marketing in nationwide media that reached Louisiana but was not directed to Louisiana."[18]

Here, the extent of Defendant's contact with Louisiana includes two letters sent to Mr. Fagan in the state of Louisiana and the fact that Defendant was licensed as a "debt collector" in Louisiana years before the alleged incident between April 24, 2000 and March 28, 2005.  Similar to *Jackson*, these contacts are not systematic, continuous, or substantial enough to support general jurisdiction.

### 2. *Specific Jurisdiction*

Even when a defendant is not subject to general personal jurisdiction in a forum state, a district court may nonetheless exercise specific jurisdiction over the defendant based on a three-prong analysis: "(1) whether the defendant has minimum contacts with the forum state; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable."[19]

In *Guidry v. United States Tobacco Co., Inc.*,[20] the Fifth Circuit explained that

> [w]hen a nonresident defendant commits a tort within the state, or an act outside the state that causes tortious injury within the state, that tortious conduct amounts to sufficient minimum contacts with the state by the defendant to constitutionally permit courts within that state, including federal courts, to exercise personal adjudicative jurisdiction over the tortfeasor and the causes of actions arising from its offenses or quasi-offenses.[21]

---

[18] *Id.* at 584-85 (internal citations omitted).

[19] *Id.* at 585 (citing *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)).

[20] 188 F.3d 619 (5th Cir. 1999).

[21] *Id.* at 628.

Thus, specific jurisdiction may arise without the non-resident defendant ever setting foot in the forum state, or may arise incident to the commission of a single act directed at the state.[22]

In *Brown v. Flowers Industries, Inc.*,[23] the Fifth Circuit found that the district court erroneously concluded that one defamatory phone call was an insufficient contact under the due process clause to subject the defendants to *in personam* jurisdiction.[24]   The Fifth Circuit instructed that "[t]he number of contacts with the forum state is not, by itself, determinative[,]" and "[w]hat is more significant is whether the contacts suggest that the nonresident defendant purposefully availed himself of the benefits of the forum state."[25]

In this case, the publicly accessible records maintained by the Secretary of State for the State Louisiana indicate that Defendant was licensed as a "debt collector" in Louisiana for a certain period between April 24, 2000 and March 28, 2005, but has been "inactive" and has not been licensed to do business in the State of Louisiana since that date.   Nevertheless, Defendant sent a letter to Mr. Fagan in Louisiana seeking to collect a debt on November 19, 2009, and sent an additional letter on at least one other date.   Further, by reporting the alleged debt to Experian and Equifax, Defendant caused the Fagans to sustain damages in Louisiana, despite the fact that any alleged damage to the Budget vehicle would have been a debt of Leake & Anderson, rather than Plaintiffs.   Accordingly, this Court finds that Defendant purposefully availed itself of the benefits of the forum state by attempting to collect a debt from, and ultimately reporting information about, a resident of Louisiana, which caused injury or damage in this state.

---

[22] *Stuart v. Spademan*, 772 F.2d 1185, 1191 (5th Cir. 1985).

[23] 688 F.2d 328 (5th Cir. 1982).

[24] *Id.* at 333.

[25] *Id.*

Once it has been established that the defendant purposefully established minimum contacts within the forum state sufficient to sustain this Court's exercise of personal jurisdiction, "these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'"[26]   In *Brown*, the Fifth Circuit recognized that "'[w]hen a defendant *purposefully* avails himself of the benefits and protection of the forum's laws-by engaging in activity . . . outside the state that bears reasonably foreseeable consequences in the state-maintenance of the law suit does not offend traditional notions of fair play and substantial justice.'"[27]   In addition to the existence of foreseeable consequences, the Fifth Circuit instructed courts to consider "'the quantity of contacts, and the source and connection of the cause of action with those contacts' in determining whether a defendant's actions constitute 'purposeful availment.'"[28]   The Fifth Circuit noted that "[t]wo other factors are also relevant in determining whether the exercise of personal jurisdiction comports with due process. The first is "the interest of the state in providing a forum for the suit."[29]   The second is the "relative conveniences and inconveniences to the parties."[30]

Applying these factors in *Brown*, the Fifth Circuit stated:

These considerations lead us to conclude that the defendants are not denied due process by being subjected to suit in [the forum state]. [The defendant] initiated the telephone call and allegedly committed an intentional tort.  The injurious effect of the tort, if one was committed, fell in [the forum state], which the defendant could easily have foreseen.  The injury was felt entirely by a [forum state] resident and a [forum state] corporation. Forcing them to travel to [the defendant's state of residence] to litigate would not advance "(their) interest in

---

[26] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

[27] 688 F.2d at 333 (quoting *Miss. Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1007 (5th Cir. 1982)) (emphasis added).

[28] *Id.* (quoting *Prods. Promotions, Inc. v. Cousteau*, 495 F.2d 483, 494 n. 17 (5th Cir. 1974)).

[29] *Id.*

[30] *Id.*

obtaining convenient and effective relief."  There are only two witnesses likely to be called with regard to the content of the telephone call . . . .   All of the witnesses to the effect of the call reside in [the forum state].[31]

Here, Budget initiated the debt collection process against Mr. Fagan by sending him letters on three separate occasions.  The last letter sent on October 19, 2009, was addressed to "Leake and Anderson, LLP," indicating an awareness that the debt was legally owed by the law firm.  According to the complaint, Defendant received the Budget file containing Budget's correspondence with Mr. Fagan and his reply disputing the claim.  After receiving Budget's file regarding the claim, Defendant then purposefully engaged in activity within the state of Louisiana by sending two letters to collect the debt to Mr. Fagan in Louisiana.  Further, by reporting the debt to Equifax and Experian, Defendant also took action outside of the state with foreseeable consequences in Louisiana.  Thus, *Brown* indicates that under such circumstances traditional notions of fair play and substantial justice are not offended, because Defendant initiated the debt collection activities in the forum state resulting in foreseeable injury felt entirely within the forum state.

In addition, the injury was felt entirely by Louisiana residents.  Forcing Plaintiffs to travel to Nevada to litigate would not advance their interests in obtaining convenient and effective relief.  Further, all of the witnesses to the injurious effects of the debt collection practices are in Louisiana, including the Fagans and Jane M. Ashbire, the Wells Fargo employee involved in refinancing the Fagans' home.  Finally, Louisiana has a substantial interest in protecting its residents from misrepresentations or unfair debt collection practices by debt collectors.  The fact that Defendant was not registered as a debt collector in 2011 in the State of Louisiana, despite its efforts to collect debts in Louisiana, does not preclude this Court from exercising specific

---

[31] *Id.* at 333-34.

personal jurisdiction when Defendant chooses to engage in activities targeting Louisiana residents and resulting in foreseeable injury within Louisiana.

### 3.  Service of Process

Additionally, service of process must be effective under the Federal Rules of Civil Procedure before a default judgment may be entered against a defendant.[32]  Rule 4(e)(1) of the Federal Rules of Civil Procedure allows service of process to be made within any judicial district of the United States by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Louisiana's long-arm statute provides:

> A.  In a suit under R.S. 13:3201, a certified copy of the citation or the notice in a divorce under Civil Code Article 102 and of the petition or a certified copy of a contradictory motion, rule to show cause, or other pleading filed by the plaintiff in a summary proceeding under Code of Civil Procedure Article 2592 shall be sent by counsel for the plaintiff, or by the plaintiff if not represented by counsel, to the defendant by registered or certified mail, or actually delivered to the defendant by commercial courier, when the person to be served is located outside of this state or by an individual designated by the court in which the suit is filed, or by one authorized by the law of the place where the service is made to serve the process of any of its courts of general, limited, or small claims jurisdiction.
> . . .
> D.  For purposes of this Section, a "commercial courier" is any foreign or domestic business entity having as its primary purpose the delivery of letters and parcels of any type, and which:
> > (1)  Acquires a signed receipt from the addressee, or the addressee's agent, of the letter or parcel upon completion of delivery.
> > (2)  Has no direct or indirect interest in the outcome of the matter to which the letter or parcel concerns.[33]

---

[32] *See Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 934, 941-42 (5th Cir. 1999).

[33] La. Rev. Stet. 13:3204.

Within twenty days after being validly served with the summons and complaint, Federal Rule of Civil Procedure 12(a) requires the defendant to serve an answer.[34]

According to the online records of the Secretary of State for the State of Nevada, Defendant is incorporated and domiciled in the State of Nevada, and the registered agent for service of process is Michael D. Mazur, 3037 East Warm Springs Road, Building 10 – Suite 200, Las Vegas, Nevada 89120.   The Clerk of Court issued summons to Defendant through its registered agent at Plaintiffs' request.   Three days after the complaint was filed, Plaintiffs' counsel sent a letter via Federal Express to Defendant enclosing the complaint and the summons issued by the Clerk of Court on January 26, 2012.   On January 27, 2012, Federal Express properly delivered and thus effected service upon Defendant in accordance with Louisiana's long-arm statute,[35] which allows for service of process by "registered or certified mail, or actually delivered to the defendant by commercial courier."[36]   Accordingly, Defendant was properly served.

## B.  Entry of Judgment

### 1.  Default Judgments Pursuant to Federal Rule of Civil Procedure 55

The duty to respond to a complaint is triggered by the service of summons or lawful process, and the failure to do so may result in the entry of a default or default judgment under Federal Rule of Civil Procedure 55.[37]   Rule 55 provides:

---

[34] Fed. R. Civ. P. 12(a)(1)(A).

[35] Proof of Service, Rec. Doc. 5 (attaching signed receipt of delivery to the addressee from Federal Express).

[36] La. Rev. Stat. § 13:3204.

[37] *Rogers*, 167 F.3d at 937; *see also Georgia Power Project v. Georgia Power Co.*, 409 F. Supp. 332, 336 (N.D. Ga. 1975); *McMillen v. J.C. Penney Co.*, 205 F.R.D. 557, 558 (D. Nev. 2002).

(a) Entering a Default. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

(b) Entering a Default Judgment.

> (1) By the Clerk. If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk--on the plaintiff's request, with an affidavit showing the amount due--must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.

> (2) By the Court. In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to:

>> (A) conduct an accounting;
>> (B) determine the amount of damages;
>> (C) establish the truth of any allegation by evidence; or
>> (D) investigate any other matter.

As the Clerk of Court has found Defendant in default, the Court must determine whether entry of a default judgment should follow.[38] If the procedural prerequisites for entering a default judgment are met, the Court must then decide whether Plaintiff's requests for relief are appropriate.[39]

---

[38] *See T-Mobile USA Inc. v. Shazia & Noushad Corp.*, No. 08-CV-00341, 2009 WL 2003369, at *2 (N.D. Tex. July 10, 2009).

[39] *Id.*

14

The Fifth Circuit has held that "default judgments are a drastic remedy not favored by the Federal Rules and resorted to by courts only in extreme situations."[40]   Even if a party is technically in default, the party seeking a default judgment is "not entitled to a default judgment as a matter of right."[41]   Instead, entry of a default judgment is committed to the sound discretion of the district court, and is afforded great deference upon review.[42]

The Fifth Circuit looks at six factors when considering whether the entry of a default judgment was appropriate:

> (1) if the default was caused by a good faith mistake or excusable neglect; (2) if there has been substantial prejudice; (3) the harshness of a default judgment; (4) if there are material issues of fact; (5) if grounds for a default judgment are clearly established; and (6) if the court would think itself obligated to set aside the default on the defendant's motion.[43]

Here, the factors weigh in favor of entering a default judgment.  First, the default was not caused by good faith mistake or excusable neglect.  Although Defendant was properly served over one year ago and has continued to receive notice of every filing in this matter from the Clerk of Court, Defendant has not participated in this matter at all, and therefore has not offered any evidence that its failure to appear was the product of good faith mistake or excuse.  With regard to the second factor, Defendant's failure to respond to Plaintiffs' correspondences and ultimately the complaint in this matter has substantially prejudiced Plaintiffs' interest in

---

[40] *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 247, 276 (5th Cir. 1989).

[41] *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996).

[42] *See James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993); *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977).

[43] *T-Mobile USA Inc.*, 2009 WL 2003369, at *2 (citing *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998) ("Relevant factors [in deciding whether to enter a default judgment] include whether material issues of fact are at issue, whether there has been substantial prejudice, whether the grounds for default are clearly established, whether the default was caused by a good faith mistake or excusable neglect, the harshness of a default judgment, and whether the court would think itself obliged to set aside the default on the defendant's motion.")).

resolving its claims against Defendant[44] and addressing the outstanding debt on their credit report. Additionally, entry of a default judgment would not be overly harsh, as Plaintiffs are seeking a relatively small sum of money in damages, totaling $13,908.41 in economic damages. Although Plaintiffs are also requesting non-pecuniary damages for mental anguish, punitive damages, and attorney's fees in an amount totaling an additional $35,000.00, a default judgment "does not establish the amount of damages,"[45] and a court is not required to award damages for which there is no basis in fact or law.[46]

The fourth factor requires the Court to consider if there are any material issues of fact. However, when a party fails to respond to a complaint, as Defendant has done here, it also fails to place any material facts in dispute, and is barred from contesting on appeal the facts as established by the participating party's pleadings.[47] As to the fifth factor, the grounds for default are clearly established because Defendant was properly served with the summons and the complaint more than a year ago, and he continues to receive notice of everything filed or issued in this matter. Nevertheless, Defendant has failed to answer or otherwise appear. Finally, the Court would not be obligated to set aside the default upon a motion from Defendant on certain claims asserted by Plaintiffs. As discussed in greater detail below, Plaintiffs have asserted some claims that fail as a matter of law on the facts alleged by Plaintiffs, and thus a default judgment

---

[44] See *United States v. Fincanon*, No. 08-CV-61, 2009 WL 301988, at *2 (N.D. Tex. Feb. 6, 2009) (holding that a plaintiff's interests were prejudiced because the defendant's failure to respond to the complaint halted the adversary process).

[45] *United States For Use of M-Co Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987).

[46] See *T-Mobile USA Inc.*, 2009 WL 2003369, at *3 (stating that courts must determine if the relief requested is appropriate under governing law).

[47] *Nishimatsu Constr. Ltd. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (citing *Ohio Cent. R. Co. v. Cent. Trust Co.*, 133 U.S. 83 (1890) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established."); *Thomson v. Wooster*, 114 U.S. 104 (1885).

will not be granted on those claims.[48]  Therefore, with that caveat, the Court finds that the procedural prerequisites to enter a default judgment are satisfied.  Next, the Court must determine whether, taking all Plaintiffs' well-pleaded facts as true, Plaintiffs adequately demonstrated that they are entitled to a default judgment on the asserted claims.[49]

### 2. Breach of the Fair Credit Reporting Act ("FCRA")

Congress enacted the FCRA, 15 U.S.C. § 1681, *et seq.*, "'to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.'"[50]  Section 1681s–2(b) of the FCRA explains the responsibilities of furnishers of credit information after they have been notified by a credit reporting agency that the consumer disputes the credit information provided by the furnisher. Upon receiving notice of a dispute "pursuant to section 1681i(a)(2), the furnisher is required to conduct an investigation and report the results to the appropriate consumer reporting agencies.[51] Section 1681i(a)(2) requires the consumer reporting agency to "provide notification of the dispute to any person who provided any item of information in dispute, at the address and in the manner established with the person. The notice shall include all relevant information regarding the dispute that the agency has received from the consumer or reseller."

---

[48] *Id.*

[49] *Id.*

[50] *Stevenson v. TRW Inc.*, 987 F.2d 288, 292 (5th Cir. 1993) (quoting 15 U.S.C. § 1681(b)).

[51] *See* 15 U.S.C. § 1681s–2(b)(1).

Although the Fifth Circuit has declined to reach the issue, the Ninth Circuit and district courts within this circuit and across the country have permitted the consumer to bring a private cause of action against the furnisher if it does not comply with the provisions of Section 1681s–2(b).[52]  In *Young v. Equifax Credit Information Services*, the Fifth Circuit explained that "the FCRA establishes a duty for a consumer reporting agency (like Equifax or CBLC) to give notice of a dispute to a furnisher of information (like [the department store]) within five business days from the time the consumer notifies the consumer reporting agency of the dispute."[53]  The court elaborated that such notice to the furnisher of credit information by the consumer reporting agency is necessary to trigger the furnisher's duties under Section 1681s-2(b).[54]  Accordingly, the Fifth Circuit held that any private right of action the consumer may have had under Section 1681s-2(b) would require proof that a consumer reporting agency, like Equifax or CBLC, had notified the furnisher of credit information, in that case the department store, pursuant to Section 1681i(a)(2).[55]

Here, Plaintiffs have similarly failed to point to any evidence, or even plead, that Defendant received notice of a dispute from Equifax or Experian, the consumer reporting agencies involved, within five days, as is required to trigger Defendants' duties under Section 1681s-2(b).  Instead, Plaintiffs have only provided evidence that they sent letters disputing the

---

[52] *See Thomasson v. Bank One, La., N.A.*, 137 F. Supp. 2d 721, 723 (E.D. La. 2001).  The Fifth Circuit has not decided whether a private cause of action exists.  *See Young v. Equifax Credit Info. Servs.*, 294 F.3d 631, 639-40 (5th Cir. 2002) ("We need not decide, and do not decide, whether a private right of action exists against a furnisher of information because, as we explain below, [Plaintiff] has not established an element that would be required if any such action does exist. We observe-without approving or disapproving the holding-that the only circuit court that has decided this issue held that there is a private right of action.  *Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057 (9th Cir. 2002).")

[53] *Young*, 294 F.3d at 639 (citing 15 U.S.C. § 1681i(a)(2)).

[54] *Id.* (citing 15 U.S.C. § 1681s-2(b)(1) ("After receiving notice pursuant to [section 1681i(a)(2) ] of this title of a dispute.")).

[55] *Id.*

18

alleged debt directly to Budget and Defendant.  There is no evidence or allegation before the Court that Plaintiff ever notified Equifax or Experian.  Therefore, Plaintiffs' claims fail as a matter of law, because any private right of action created by the FCRA requires a consumer to notify the consumer reporting agency, rather than the furnisher of information directly, who then gives notice of the dispute to the furnisher of information.  Here, although the Court accepts all well-pleaded facts as true for purposes of a default judgment, the Plaintiffs have not alleged that they contacted Experian or Equifax, as required to trigger Defendant's duties under the FCRA.

### 3. Breach of the Fair Debt Collection Practices Act ("FDCPA")

The FDCPA, 15 U.S.C. § 1692, *et seq.*, was enacted "'to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'"[56] The term "debt collector" includes "'any person who uses any instrumentality of interstate commerce or the mails in any business, the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.'"[57]  Further, the obligation at issue must qualify as a "debt" within the meaning of the FDCPA, which is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or

---

[56] *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1234 (5th Cir. 1997)(quoting 15 U.S.C. § 1692(e)).

[57] *Id.* (quoting 15 U.S.C. § 1692a(6)).

not such obligation has been reduced to judgment."[58]   Under the FDCPA, debt collectors are "prohibited from, *inter alia*, using any false, deceptive, or misleading representation or means in connection with the collection of any debt.[59] "When deciding whether a debt collection letter violates the FDCPA, [courts] must evaluate any potential deception in the letter under an unsophisticated or least sophisticated consumer standard."[60]

Here, Plaintiffs allege, and the evidence supports, that Defendant was a debt collector within the meaning of the FDCPA, because it was attempting to collect a debt on behalf of Budget.   Although the FDCPA requires that the "debt" at issue be primarily for personal purposes and Plaintiff claims that any debt incurred here technically would have been a business debt of Leake & Anderson, Defendant treated and regarded Mr. Fagan as a consumer who was using the Budget vehicle for his personal use and thus individually liable to Budget, as evidenced by Defendant's attempts to collect the debt against Mr. Fagan individually.

Section 1692(e) of the FDCPA prohibits "threat[s] to take any action that cannot legally be taken or that is not intended to be taken" and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."   Here, Defendant threatened to collect and file suit against Mr. Fagan individually for the Budget claim, which is an action that could not be taken because, according to Plaintiffs, Mr. Fagan had no individual liability for the debt.   Defendant also allegedly violated Section 1692(e) by falsely indicating in its letter that Mr. Fagan was individually liable for the debt by

---

[58] *Hamilton v. United Healthcare of La., Inc.,* 310 F.3d 385, 388 (5th Cir. 2002)(quoting 15 U.S.C. § 1692a(5)).

[59] *Taylor*, 103 F.3d at 1234 (quoting 15 U.S.C. § 1692(e)).

[60] *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009)(internal quotations omitted).

threatening to collect the debt against him.  Again, the evidence and alleged facts support the conclusion that Defendant engaged in abusive debt collection practices under the FDCPA.

### 4.  Claims Under Louisiana Law

#### a.  Louisiana Civil Code Article 2315(A)

 Plaintiffs claim that Defendant is liable for breach of Louisiana Civil Code Article 2315(A), which provides: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." Under Louisiana law, a negligent misrepresentation claim is made out when a person, in the course of his business or other matters in which he has a pecuniary interest, supplies false information without exercising reasonable care, for the guidance of others, who justifiably and detrimentally rely on such information and thereby suffer a pecuniary loss."[61]  "A person commits the tort of negligent misrepresentation when (1) he has a legal duty to supply correct information; (2) he breaches that duty; and, (3) his breach causes damages to the plaintiff."[62]

Plaintiff argues that Defendant had a duty to furnish correct information about any alleged debt, which Defendant failed to do.  However, in *Young*, the Fifth Circuit stated that "[t]he FCRA preempts state law defamation or negligent reporting claims unless the plaintiff consumer proves 'malice or willful intent to injure' him."[63]  In Plaintiffs' motion for a default judgment, Plaintiffs represent that Defendant's conduct, motive and intent represent a willful disregard of the FRCA.  However, Plaintiffs have not pleaded any facts nor do they point to any

---

[61] *Hardy v. Hartford Ins. Co.*, 236 F.3d 287, 292 (5th Cir. 2001).

[62] *Soc'y of the Roman Catholic Church of the Diocese of Lafayette v. Interstate Fire & Cas. Co.*, 126 F.3d 727, 742 (5th Cir. 1997).

[63] *Young*, 294 F.3d at 638.

evidence to demonstrate that Defendant acted with malice or willful intent to injure.  Plaintiffs argue that such intent should be inferred. But, considering Plaintiffs' failure to plead facts supporting the Defendant's malice and willful intent and the fact that Plaintiffs could not have known the intent of Defendant, it is not appropriate to award damages on the basis of a possible inference that Defendant acted with malice and willful intent because they did not respond to Plaintiffs' letters.


### b.  Louisiana Unfair Trade Practices Act ("LUTPA")

The LUTPA, La. Rev. Stat. § 51:1401, *et seq.*, affords a cause of action to any natural or juridical person "who suffers any ascertainable loss of money or moveable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by La.R.S. 51:1405."[64]  "Private actions [under the LUTPA] are permitted by any person who suffers any ascertainable loss as a result of the use by another person of an unfair practice," and if the action is successful, the court "shall award reasonable attorney's fees to the prevailing party."[65] Further, what constitutes an unfair trade practice is to be determined by the courts on a case-by-case basis.[66] Under the LUTPA, a business transaction is deemed "unfair" when it offends established policy and when it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers[;][67] a business action is "deceptive" when it amounts to fraud, deceit, or misrepresentation.[68]

---

[64] *Monroe Med. Clinic, Inc. v. Hosp. Corp. of Am.*, 622 So. 2d 760, 763 (La. App. Ct. 1993).

[65] La. Rev. Stat. §51:1409(A); *Roustabouts, Inc. v. Hamer*, 447 So. 2d 543, 548 (La. App. Ct. 1984).

[66] *Monroe Med. Clinic, Inc. v. Hosp. Corp. of Am.*, 522 So. 2d 1362, 1365 (La. App. Ct. 1988).

[67] *Omnitech International, Inc. v. Clorox Company*, 11 F.3d 1316, 1332 (5th Cir. 1994).

[68] *Monroe Med. Clinic, Inc.*, 622 So.2d at 763.

Under Louisiana law a "debt collector" is:

> any person, other than a licensed Louisiana attorney, who uses any instrumentality of intrastate or interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another, and relative to Louisiana clients, notwithstanding the fact that such person has no employees, offices, equipment, or other physical facilities in this state.

Defendant is a "debt collector" under Louisiana law, because in addition to previously being a registered debt collector within the State of Louisiana, Defendant was attempting to collect a debt within Louisiana from Plaintiffs through the use of interstate mail.

Defendant's conduct can also fairly be deemed deceptive, unscrupulous and substantially injurious to consumers.  Defendant knew or should have known that any alleged debt was disputed and, in any event, was owed by Leake & Anderson based on Mr. Fagan's letters. Nevertheless, Defendant reported the debt to Equifax and Experian as a personal debt of the Fagans.  Further, Defendant failed to respond to Plaintiffs' attempt to contact Defendant regarding the alleged debt.  Therefore, considering the facts set forth by Plaintiffs, Defendant engaged in conduct amounting to unfair and deceptive debt collection practices under the FDCPA.

### C. Damages

While this Court has found that entry of a default judgment is warranted on certain claims, it must further determine if it would be appropriate to award the remedies requested by Plaintiffs in the pending motion.[69]  Federal Rule of Civil Procedure 54(c) states that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."

---

[69] *See T-Mobile USA Inc.*, 2009 WL 2003369, at *3.

While the relief available is restricted to what is requested in the pleadings, the Court must also determine if the requested relief is appropriate based on governing law.[70]   In Plaintiffs' complaint, they seek "any damages, attorney's fees, penalties, costs, expenses, interest and/or other relief allowed by federal, Louisiana, Nevada, and any other applicable law," but they do not state a specific amount.[71]   However, the memorandum in support of the instant motion and the attached proposed order specifically request past and future economic damages in the amount of $13,908.41; damages for mental anguish, pain and suffering and other non-pecuniary damages in the amount of $5,000 to each Plaintiff; punitive damages in the amount of $10,000 to each Plaintiff for the Defendant's willful violation of the FCRA, and attorneys' fees in the amount of $5,000.   As to costs, Plaintiffs request the opportunity to submit a Bill of Costs. Finally, Plaintiffs request prejudgment and post judgment interest on the award at the rate described in 28 U.S.C. § 1920, until the judgment is paid in full.[72]

When a party seeks a default judgment for damages, the Fifth Circuit has held that "damages should not be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts."[73]   However, "where the amount of damages and/or costs can be determined with certainty by reference to the pleadings and supporting documents and where a hearing would not be beneficial, a hearing is unnecessary."[74]   To the extent Plaintiffs pleaded sufficient facts to support a default judgment on their claims, Plaintiffs have provided the Court with affidavits and documentary evidence to support the actual damages and attorney's fees

---

[70] *Id.*

[71] Rec. Doc. 1 ¶ 61.

[72] *See* Rec. Doc. 16-1 at pp. 29-42 (discussing requested damages and attaching Proposed Order).

[73] *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

[74] *Columbia Pictures Indus., Inc. v. Whitting*, No. 06-CA-0133, 2006 WL 1851388, at *1 (W.D. Tex. June 1, 2006)(citing *James*, 6 F.3d at 310).

requested.  As this information establishes the basis for the damages and relief specified in the request for default judgment, it is not necessary for the Court to hold a hearing.[75]  Furthermore, as Defendant has failed to take action in this matter, it is unlikely that it would participate in an evidentiary hearing to determine damages.  Therefore, a hearing would not be beneficial and as such is unnecessary.[76]

   1.   *Plaintiffs' Damages under the FDCPA, the FCRA, and Louisiana Law*

Plaintiffs request the following economic damages as part of their actual damages: $8,439.21 in damages relating to the Wells Fargo refinancing; $206.70 for the financing of the purchase of the Nissan Murano; and, $37.50 annually for the difference in the credit card interest charges for a period of seven years (which represents the length of time that the information may remain on any credit report under the FRCA).[77]  Additionally, because the debt will remain on Plaintiffs' credit report for the next seven years, Plaintiffs seek a reasonable award for other financing that Plaintiffs anticipate in the next seven years, including:

> the financing of new vehicle purchases, any further refinancing of any home mortgage (which the Fagans are contemplating by reason of the even lower interest rates now available for refinancing), the refinancing of the Fagans' home equity line of credit for the same reasons, the purchase of a new home, and the purchase of other items that require financing separate from a credit card.[78]

Plaintiffs claim that a reasonable damages award for future economic damages and losses over the next seven years is $5,000.  Therefore, Plaintiffs request a total of $13,908.41 in past and future economic damages.

---

[75] *Columbia Pictures Indus., Inc.*, No. 06-CA-0133 at *2.

[76] *James*, 6 F.3d at 311 (citing Rule 55(b)).

[77] Rec. Doc. 16-1 at p. 34.

[78] *Id.* at pp. 34-35.

Under the FDCPA, Plaintiffs may recover "any actual damages sustained" as a result of a debt collectors failure to comply with the FDCPA, and "such additional damages as the court may allow, but not exceeding $1,000."[79]   In exercising its discretion to award "additional damages," the Court should consider the "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional."[80]   Further, "in the case of any successful action to enforce the [] liability [under the FDCPA], the costs of the action, together with [] reasonable attorney's fee[s] as determined by the court" may be awarded.[81]   The Fifth Circuit has elaborated that "[t]he language of the statute places explicit conditions on an award of additional damages which must be approved by the court and attorney's fees which are only available where the plaintiff has succeeded in establishing that the defendant is liable for actual and/or additional damages."[82]

Here, Plaintiffs are requesting the economic damages outlined above, and an award of $1,000 to each plaintiff in statutory "additional damages."   Additional damages are warranted here considering Defendant's refusal to respond to this lawsuit or any of Plaintiffs efforts to dispute the alleged debt, thereby ensuring that the disputed debt remains on Plaintiffs credit score up to seven years, despite Plaintiffs efforts to resolve the issue.   Plaintiffs are also requesting costs and attorney's fees under the FDCPA, which are discussed in greater detail below.

Similarly, under Section 51:1409(A) of the LUTPA, Plaintiffs can "recover actual damages," and "[i]n the event that damages are awarded under [Section 51:1409(A)], the court

---

[79] 15 U.S.C. § 1692k.

[80] *Guajardo v. GC Servs., LP*, 498 F. App'x 379, 382 (5th Cir. 2012).

[81] *Johnson v. Eaton*, 80 F.3d 148, 150 (5th Cir. 1996)(citing 15 U.S.C. § 1692k).

[82] *Id.* at 151.

shall award to the person bringing such action reasonable attorney fees and costs."[83]   Thus, the economic damages and attorney's fees and costs that Plaintiffs request under the FDCPA, are also supported by Plaintiffs' success on their claims under the LUTPA and FDCPA.

Because Plaintiffs claims under the FCRA fail as a matter of law, Plaintiff may not recover damages under the FCRA.   Plaintiffs note that actual damages under the FCRA "may include damages for humiliation or mental distress even if the consumer has suffered no out-of-pocket losses, as well as damages for injury to reputation and creditworthiness."[84]   Accordingly, Plaintiffs request an award of $5,000 to each Plaintiff for the anxiety, concern, frustration and worry that the Defendant's conduct and resulting impact on Plaintiffs' credit has caused, and will continue to cause for the next seven year.   Additionally, Plaintiffs argue that an award of punitive damages in the amount of $10,000 to each Plaintiff is warranted under Section 1681n for willful noncompliance with the FCRA.   However, awards for punitive damages and mental distress under the FCRA are inappropriate where the FCRA claims fail as matter of law.

Further, Plaintiffs claims under Louisiana Civil Code Article 2315 are preempted by the FCRA, unless Plaintiffs demonstrate malice and willful intent on the part of the Defendant. Plaintiffs have adduced little, if any, evidence of such intent, and therefore are not entitled to recover damages under Article 2315.   Damages under Article 2315 "may include loss of consortium, service, and society, and shall be recoverable by the same respective categories of persons who would have had a cause of action for wrongful death of an injured person." However, "[d]amages do not include costs for future medical treatment, services, surveillance, or procedures of any kind unless such treatment, services, surveillance, or procedures are directly

---

[83] La. Rev. Stat. § 51:1409(A).

[84] Rec. Doc. 16-1 at p. 30 (quoting *Cousin v. Trans Union Corp.*, 246 F.3d 359, 369 n. 10 (5th Cir. 2001)

related to a manifest physical or mental injury or disease."[85]   Therefore, even if the Court assumed that Defendant acted with malice and willful intent, Plaintiffs' damages under Article 2315 would be limited to actual damages in this case, which Plaintiffs are already entitled to under the FDCPA and LUTPA.


   *2.  Attorney's Fees and Costs*

   As discussed above, pursuant to 15 U.S.C. § 1692k(a)(3), a plaintiff is entitled to the costs of the FDCPA action, as well as reasonable attorneys' fees.[86]   Attorney's fees must be calculated at the "prevailing market rates" in the relevant "community for similar services by attorneys of reasonably comparable skills, experience, and reputation."[87] The applicant bears the burden of producing satisfactory evidence that the requested rate is aligned with prevailing market rates,[88] which necessarily includes an affidavit of the attorney performing the work and information of rates actually billed and paid in similar lawsuits.[89]   Plaintiffs claim that a rate of $250 per hour is reasonable here for the twenty hours of work completed by Plaintiffs' attorney, who has 28 years of experience.[90]   Other courts in this district have awarded similar fees.[91]

---

[85] La. C.C. art. 2315(B).

[86] *See Johnson*, 80 F.3d at 150 (citing 15 U.S.C. § 1692k).

[87] *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

[88] *See id.* at 897.

[89] *Id.* at 895 n. 11.

[90] *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 661 (5th Cir. 2002) (citing *Rutherford v. Harris County, Texas*, 197 F.3d 173, 192 (5th Cir. 1999)).

[91] *See, e.g.*, *Yelton v. PHI Inc.*, 2012 U.S. Dist. LEXIS 114100, at *33 (E.D. La. Aug. 14, 2012) (Roby, Mag. J.)(awarding $250 hourly rate for attorneys with 11 to 15 years of experience); *Filson v. Tulane Univ.*, Civ. A. No. 09-7451, 2010 U.S. Dist. LEXIS 110639, 2010 WL 3943543 (E.D. La. Oct. 4, 2010)(Roby, Mag. J.) (awarding $250 per hour for an attorney with 25 years experience).

"To calculate attorney's fees, a court must first 'calculate a lodestar fee by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate.'"[92] The Court must then consider the applicability and weight of the following twelve factors, and may make upward or downward adjustments to the lodestar figure if the factors warrant such a modification:

> (1) the time and labor required to litigate the matter; (2) the novelty and complicatedness of the issues; (3) the skill required to properly litigate the issues; (4) whether the attorney had to refuse other work to litigate the case; (5) the attorney's customary fee; (6) whether the fee is fixed or contingent; (7) whether the client or case imposed time constraints; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) whether the case was 'undesirable'; (11) the type of attorney-client relationship and whether the relationship was long-standing; and (12) awards made in similar cases.[93]

Here, Plaintiffs are requesting the lodestar amount of $250 per hour for the twenty hours of work performed, without any upward or downward adjustment.  Plaintiffs make the following arguments with respect to each factor:

> The Declaration submitted by counsel for Plaintiff describes and details the work that he performed. . . . The nature of the proof submitted to support this motion . . . and [the] detailed memorandum of law, the issues are complex and novel. Further, the prosecution of claims based on the FCRA, FDCPA and other laws require specific knowledge, experience and skills to properly litigate the issues. While counsel for Plaintiffs did not necessarily have to refuse other work to litigate the case, his time and ability to do so is limited by reason of his current employment in the oil and gas business while maintaining a part-time law practice.  Mr. Kemmerly's Declaration establishes that $250 is his hourly fee. Counsel for Plaintiffs' fee is based on an hourly rate, which is a fixed fee.  Mr. Kemmerly's handling of this case was subject to time constraints because of his work in the oil and gas land business.  The amount of damages [is] not substantial and a successful result should be obtained by reason of the Defendant's obviously deliberate failure to ever respond to the Plaintiffs' letters regarding the Budget claim and the negative credit reports and its plainly purposeful failure to appear in these proceedings. As set forth in George Fagan and Mr. Kemmerly's

---

[92] *Green*, 284 F.3d at 661.

[93] *Id.* at 661; *see also, Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-718 (5th Cir. 1974).

> Declarations, counsel for Plaintiffs has substantial experience, an excellent reputation and considerable abilities as the attorney. Because of the relatively low amount of damages sought by the Plaintiffs and the nature of the declaratory requested relief, the case would be considered to be undesirable and Mr. Kemmerly's handling of the case is largely due to his longstanding friendship with Mr. Fagan.

This Court finds that Plaintiffs' arguments are supported by affidavits and other evidence before the Court indicating that attorneys' fees in the amount of $250 per hour for twenty hours, or $5,000, is reasonable, and an upward or downward adjustment unwarranted.

Finally, Plaintiffs request that they be awarded the costs of the action pursuant to 28 U.S.C. § 1920, subject to the timely filing of a Bill of Costs. If Plaintiffs are awarded monetary damages under the FDCPA and the LUTPA, both statutes also provide for an award of costs.[94] Accordingly, Plaintiffs are entitled to receive the costs of this action, because they will be awarded monetary damages under the FDCPA and LUTPA.

### III.  Conclusion

The Court will grant Plaintiff's motion for a default judgment on Plaintiffs' claims for breach of the FDCPA and the LUTPA. However, Plaintiffs' claims under the FCRA fail as a matter of law, because Plaintiffs have not alleged that they ever contacted Equifax or Experian regarding the disputed debt. Further, Plaintiffs' claims under Louisiana Civil Code article 2315 are preempted by the FCRA, because Plaintiffs have not pleaded facts to support the asserted malice or willful intent on behalf of Defendant. Thus, Plaintiffs are entitled to $13,908.41 in past and future economic damages, "additional damages" under the FDCPA in the amount of

---

[94] *See* 15 U.S.C. § 1692k; La. Rev. Stat. § 51:1409(A).

$1,000.00 to each Plaintiff, attorneys' fees in the amount of $5,000.00, costs of the action, and pre-judgment and post-judgment interest.  Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Default Judgment[95] is **GRANTED IN PART AND DENIED IN PART**;

**IT IS FURTHER ORDERED** that judgment is rendered against Defendant for the following damages: Plaintiffs are jointly awarded past and future economic damages in the amount of $13,908.41; each Plaintiff is awarded $1,000.00 in statutory damages under the FDCPA; and, as the prevailing parties, the Plaintiffs are jointly awarded $5,000.00 for the reasonable attorney's fees incurred in connection with this matter;

**IT IS FURTHER ORDERED** that, as the prevailing parties, Plaintiffs are awarded costs pursuant to 28 USC § 1920, subject to the Plaintiffs timely submitting a Bill of Costs in accordance with Local Rules 54.3 and 54.3.1 and Rule 54(d) of the Federal Rules of Civil Procedure;

**IT IS FURTHER ORDERED** that Plaintiffs are awarded prejudgment interest at the rate described in 28 U.S.C. § 1961 on the award of damages from the date of judicial demand, and post judgment interest at the same rate on the award of damages, attorney's fees and costs commencing from the date of the entry of this judgment until such amounts are paid in full and the judgment is satisfied.

**NEW ORLEANS, LOUISIANA**, this 9th day of July, 2013.

*Nannette Jolivette Brown*
**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[95] Rec. Doc. 16.